1

2

3

4

5 **UNITED STATES DISTRICT COURT**

6 **EASTERN DISTRICT OF WASHINGTON**

7 FLOYD N. PHIPPS,                          No. 2:16-cv-03210-MKD

8                  Plaintiff,              ORDER GRANTING PLAINTIFF'S
                                           MOTION FOR SUMMARY
9        vs.                               JUDGMENT AND DENYING
                                           DEFENDANT'S MOTION FOR
10 COMMISSIONER OF SOCIAL                  SUMMARY JUDGMENT

11 SECURITY,                               ECF Nos. 16, 17

12                  Defendant.

13        BEFORE THE COURT are the parties' cross-motions for summary

14 judgment.  ECF Nos. 16, 17.  The parties consented to proceed before a magistrate

15 judge.  ECF No. 7.  The Court, having reviewed the administrative record and the

16 parties' briefing, is fully informed.  For the reasons discussed below, the Court

17

18

19

20

ORDER - 1

grants Plaintiff's Motion (ECF No. 16)[1] and denies Defendant's Motion (ECF No. 17).

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted). In determining whether the standard has been satisfied, a

---

[1] Both Plaintiff's Motion and the Reply fail to comply with Local Rule 10.1(a)(2) and this Court's Scheduling Order (ECF No. 15 at 2) requiring double-spaced footnotes. Plaintiff's counsel is to ensure that future filings comply with this rule as this continued practice may result in subsequent filings being stricken by the Court.

ORDER - 2

reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**FIVE-STEP EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be

"of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and

past work experience.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant is capable of

adjusting to other work, the Commissioner must find that the claimant is not

disabled.  20 C.F.R. § 416.920(g)(1).  If the claimant is not capable of adjusting to

other work, analysis concludes with a finding that the claimant is disabled and is

therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

     The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant

numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*,

700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

     In 2002, 2006, and 2007, Plaintiff filed three previous applications for Social

Security benefits, all of which were denied.  Tr. 18 at n. 1.  On March 20, 2013,

Plaintiff applied a fourth time for supplemental security income benefits.  Tr. 249-

58.  He alleged an onset date of April 1, 2002, Tr. 250, which was subsequently

amended to March 20, 2013.  Tr. 85.  The application was denied initially, Tr. 140-

53, and on reconsideration, Tr. 155-70.  Plaintiff appeared at a hearing before an

administrative law judge (ALJ) on January 9, 2015.  Tr. 37-59.  On March 16,

2015, the ALJ denied Plaintiff's claim.  Tr. 15-40.

At the outset, the ALJ's decision recognized the prior ALJ's decision finding Plaintiff not disabled. Tr. 19. Consistent with *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988) and Acquiescence Ruling 97–4(9), the ALJ determined whether "changed circumstances"[2] existed from the date his prior application for disability benefits was denied in order to rebut the presumption of continuing non-disability. Tr. 19. The ALJ found that Plaintiff's additional severe impairments (such as knee arthritis and obesity) and the change in Plaintiff's age category (to "closely approaching advanced age" after reaching age 50) constituted changed circumstances, thus the ALJ concluded Plaintiff had rebutted the presumption of ongoing non-disability.[3] Tr. 19.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since March 20, 2013. Tr. 21. At step two, the ALJ found Plaintiff has the following severe impairments: degenerative disc disease, carpal tunnel syndrome, right knee osteoarthritis, diabetes mellitus, methamphetamine dependence, cannabis dependence, depression, schizotypal

_____

[2] In order to show "changed circumstances," the evidence must indicate a "greater disability" since the prior decision denying benefits. *Chavez*, 844 F.2d at 693.

[3] The previous adjudicated time period was from October 4, 2007 to April 5, 2010, Tr. 126-27.

disorder, anxiety, post-traumatic stress disorder, and obesity. Tr. 16. At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal one of the listed impairments. Tr. 22, 31.

At step four, the ALJ also found that new and material evidence warranted a "different residual functional capacity from the one described in the prior decision," Tr. 19, which had limited Plaintiff to less than the full range of sedentary work.[4] *See* Tr. 120. The ALJ concluded Plaintiff has a residual functional capacity to perform light work with the following limitations:

> stand and walk two hours total of eight; never climb ladders, ropes, or scaffolds; occasionally stoop, balance, climb ramps, and climb stairs; never kneel, crawl, or crouch; avoid concentrated exposure to hazards and vibration; limited to simple, routine, repetitive tasks consistent with unskilled work; limited to low-stress work, which is defined as work requiring few decision and few changes; occasional, superficial contact with

---

[4] The prior April 5, 2010 administrative decision concluded the record did not support a finding of any severe musculoskeletal impairments, though Plaintiff alleged knee, back and elbow pain. Tr. 119. However, consistent with the Plaintiff's subjective complaints and his treating physician's opinion, the ALJ concluded Plaintiff could perform sedentary work with restrictions including: "[h]e can occasionally climb, balance, stoop, bend, kneel, crouch and crawl. He can perform routine tasks with simple instructions. He must work independently or with limited cooperative interactions with coworkers, and must work away from the general public." Tr. 120.

ORDER - 8

co-workers; no public contact; and frequent handling bilaterally; and would be absent from work two or three days a month.

Tr. 24.  The ALJ determined that Plaintiff is unable to perform any past relevant work.  Tr. 29.  At step five, after considering the testimony of a vocational expert and considering the Plaintiff's tendency for absenteeism, the ALJ determined that Plaintiff was not capable of working and that he was disabled.  Tr. 24; 108-09.

Having determined the Plaintiff is disabled considering all of his impairments including DAA, the ALJ performed the sequential evaluation a second time considering Plaintiff's impairments in the absence of substance use disorders.  First, the ALJ found that DAA does not cause any of Plaintiff's physical impairments or "mental health symptoms," which persist even while abstaining from drug use.  Tr. 31.  The ALJ concluded Plaintiff's "remaining" non-substance-abuse related physical and mental impairments (namely, degenerative disc disease, carpal tunnel syndrome, right knee osteoarthritis, diabetes mellitus, depression, schizotypal disorder, anxiety, post-traumatic stress disorder, and obesity) are "severe."  Tr. 31.  At step three, the ALJ found that absent his substance abuse disorders, Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 31.  Nevertheless, the ALJ concluded DAA affects both the severity of Plaintiff's mental health symptoms and pain.  Tr. 31.  At step four, the ALJ then concluded that Plaintiff would have the same RFC for light work minus the limitation of

being absent from work two or three days a month.  Tr. 32.  The ALJ determined that Plaintiff's impairments other than DAA prevent the Plaintiff from performing his past relevant work.  Tr. 35.  However, in the absence of DAA, the ALJ concluded there are jobs in significant numbers in the national economy that Plaintiff can perform, such as laundry folder and production assembler.  Tr. 35.  Thus, the ALJ concluded Plaintiff's substance use disorders are a contributing factor material to the determination of disability, therefore, Plaintiff has not been under a disability, as defined in the Social Security Act, any time from the alleged onset date through the date of the decision.  Tr. 35-36.

On September 28, 2016, the Appeals Council denied review, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him Supplemental Security Income benefits under Title XVI of the Social Security Act.  ECF No. 16.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly weighed the medical opinion evidence of Troy Witherrite, M.D., and Kevin Yuen, M.D.;

2.  Whether substantial evidence supports the ALJ's RFC in the absence of DAA;

ORDER - 10

3.  Whether the ALJ properly concluded DAA was material to the determination of disability; and

4.  Whether the ALJ properly weighed Plaintiff's symptom testimony. *See* ECF No. 16 at 1, 19.

## DISCUSSION

### A. Medical Opinion Evidence

Plaintiff contends ALJ improperly weighed the medical opinions of Troy Witherrite, M.D. and Kevin Yuen, M.D.  ECF No. 16 at 12-19.

In determining RFC, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and non-exertional, severe and non-severe.  42 U.S.C. §§ 423(d) (2)(B), (5)(B).  In weighing medical source opinions there are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*.  "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of

specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin*., 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (*citing Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

### 1. Troy Witherrite, M.D.

Dr. Witherrite began treating Plaintiff in 2011. Tr. 576. Dr. Witherrite provided three opinions on Plaintiff's ability to work, in February 2013, January 2014, and December 2014. Tr. 382-84; 576-77; 638-40. In February 2013, Dr. Witherrite concluded in a physical functional evaluation that Plaintiff's "severe" carpal tunnel syndrome would have a "very significant" interference with Plaintiff's ability to work and would limit him to sedentary work. Tr. 382-83. In

January 2014, Dr. Witherrite opined Plaintiff needed to lie down multiple times a day due to back pain and would miss four or more days per month due to his "very poor physical or social or mental condition." Tr. 576-77. In December 2014, Dr. Witherrite concluded Plaintiff was limited by low back pain, carpal tunnel syndrome, depression and anxiety, and capable of only sedentary work. Tr. 640. He noted Plaintiff's methamphetamine use and recommended treatment, but indicated Plaintiff's level of impairment would be expected to persist following 60 days of sobriety. *Id.*

The ALJ summarized Dr. Witherrite's treatment notes and opinions, describing them as "ranging from the ability to do sedentary work and the complete inability to do all work." Tr. 27. The ALJ gave "partial weight" to these opinions. Tr. 27.

By rejecting the opinions, Plaintiff argues the ALJ improperly substituted his own interpretation of medical findings for that of Plaintiff's treating physician. ECF No. 16 at 16. Because Dr. Witherrite's opinions are contradicted, in part, by the opinion of non-examining state agency physician Robert Hoskins, M.D., who in October 2013 performed a record review, the ALJ was required to give specific and legitimate reasons supported by substantial evidence for giving Dr. Witherrite's opinion little weight. *See Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1463 (9th Cir. 1995) (when there is conflicting medical evidence,

the Secretary need only set forth "specific, legitimate reasons" constituting substantial evidence for disregarding a treating [or examining] physician's opinion) (internal quotation and citations omitted).

### a. Follow-through with Treatment

First, the ALJ gave limited weight to Dr. Witherrite's opinions because Plaintiff's follow-through with treatment was poor. Tr. 27. Plaintiff's lack of commitment and follow-through with treatment programs is documented throughout the record, including Dr. Witherrite's opinions and treatment notes. Tr. 383 ("severe carpal tunnel…but he 'no showed' for the surgery"); Tr. 618 ("off meds, but stable" and "I strongly recommended he obtain some chemical dependency treatment, which he declined); Tr. 631 ("poor adherence"); Tr. 638 ("poor compliance"). Unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment can be a legitimate basis for doubting a claimant's credibility. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). However, it ordinarily does not serve as a basis to discredit a treating provider's findings or opinions. *See, e.g., Roland v. Colvin*, 2016 WL 3912015 (E.D. Cal. July 18, 2016) (consistent non-compliance with medications was not specific and legitimate reason to give only limited weight to medical opinion); *Green v. Astrue*, 2011 WL 782390 (C.D. Cal. Feb. 25, 2011) (reported non-compliance does not constitute a specific and legitimate reason for rejecting

ORDER - 14

opinion of treating physician where symptom of significant mental health problem); *c.f., Brown v. Barnhart*, 390 F.3d 535, 540–541 (8th Cir. 2004) (holding that the ALJ properly discounted treating physician's opinion where record showed the Plaintiff was non-compliant with prescribed treatment without good reason). The Ninth Circuit has also expressed "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462 (9th Cir. 1996).

Here, the ALJ did not explain how Plaintiff's failure to follow through with treatment affects the analysis of Dr. Witherrite's opinion or discuss why Plaintiff may have been reluctant or unable to take prescribed medication or to follow treatment recommendations. Dr. Witherrite's acknowledgment of Plaintiff's difficulties in follow through with medical care shows he was aware of such failure to follow through and further lends support to his opinion and conclusions that Plaintiff's prognosis was considered poor. Tr. 378; 577. The lack of follow through is not a specific and legitimate reason supported by substantial evidence to accord less weight to Dr. Witherrite's opinions.

### b. Improvement

Second, the ALJ accorded partial weight to Dr. Witherrite's opinions because Dr. Witherrite "did not explain whether drugs are the main factor preventing work," Tr. 34, and "did not discuss the claimant's improvement – both

physically and mentally – while off drugs, though he thought drugs were the main mental health issue." Tr. 27. As Plaintiff's Motion notes, ECF No. 16 at 14, and Defendant's Motion fails to address, ECF No. 17 at 12, the ALJ appears to have overlooked the statements in Dr. Witherrite's most recent opinion stating that Plaintiff's current impairments are *not* "primarily the result of drug use within the past 60 days" and the current level of impairment would be expected to persist following sobriety. Tr. 640.

Thus, this was not a specific and legitimate reason supported by the record to discredit the medical opinions of Dr. Witherrite.

### c. Consistency with Objective Medical Evidence

Third, the ALJ reasoned that Dr. Witherrite's limitation of Plaintiff to sedentary work was not substantiated by the x-ray and MRI studies in the record. Tr. 27. Treatment records from February 2013, indicate a previous x-ray of the right knee showed mild osteoarthritis and a MRI of the lumbar spine showed "mild to moderate disc bulges." Tr. 387, 383; *see also* Tr. 617 ("Osteophyte formation at L1-L2[;] 2008-MRI-moderate L foraminal disc bulge @L4-5"). Subsequent x-rays in May 2013 ordered by the consultative examiner showed "degenerative changes" of the right knee and a "moderate narrowing of the lateral compartment with slight lateral osteophytes." Tr. 420. X-rays of the lumbar spine showed "mild scattered

degenerative changes of the lumbar spine with partial lumbarization of S1," but "but [n]o acute findings." Tr. 419.

Here, the ALJ discredited the treating source's sedentary assessment, yet that assessment at least partially coincides with the ALJ's RFC to the extent it falls in between the sedentary and light exertional levels and limits the ability to stand and/or walk for only up to two hours total in an 8-hour day.[5] *See* 20 C.F.R. §

---

[5] The ALJ determined "treatment records and the claimant's activities" justified a RFC for light work, a less restrictive RFC than prior examiners' sedentary findings even though Plaintiff changed age categories and added severe physical impairments including degenerative disc disease, knee osteoarthritis, obesity, and carpal tunnel. Tr. 19. The ALJ's RFC for light work with a two-hour limitation on walking and standing, inherently presumes that Plaintiff's RFC actually falls somewhere *in between* a full range of light work and a full range of sedentary work and that Plaintiff has the capacity to meet at least some of the exertional requirements for light work, namely, lifting, carrying, pushing, pulling, and sitting. However, it does not necessarily follow that the light exertional level should be assigned when the claimant does not have the capability of performing most of the defined activities at even the minimum level identified. A number of district courts both in and out of this circuit have determined that an RFC for light work with a two-hour capacity for walking and standing is not in between, but rather coincides with a sedentary exertional work level. *See*, *e.g.*, *Campbell v. Astrue*,

ORDER - 17

416.967(a) (defining sedentary work as one that involves sitting and only "occasionally" walking and standing); SSR 83-10, 1983 WL 31251, at *5 (defining "occasionally" as occurring from very little up to one-third of the time and noting that for sedentary work periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday). It is widely known that the primary difference between light and sedentary work is that light work requires "a good deal of walking or standing." Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *5 (1993). The second major difference between the two categories of work is the amount and duration a claimant can lift or carry in an 8-hour work day

---

2010 WL 4689521, at *5 (E.D. Pa. Nov. 2, 2010) (leading case) (identifying a dispositive conflict between an ALJ's findings that a claimant was limited to two hours of standing and walking, but could still do "light" work); *McClure v. Comm'r of Soc. Sec*., 2016 WL 4628049, *7 (S.D. Cal. Aug. 9, 2016) (concluding ALJ's RFC was not supported where the two-hour stand/walk limitation was "closer to sedentary work than light work" and thus did *not* fall "somewhere in the middle."); *c.f., Young v. Astrue*, 519 F. App'x. 769, 771 (3d Cir. 2013). As Plaintiff did not specifically assert this as an issue of error, the Court need not resolve this issue. *See Carmickle v. Comm'r Soc. Sec. Admin*., 533 F.3d 1155, 1161 n. 2 (9th Cir. 2008) (declining to address an issue not argued with any specificity).

and "lifting or carrying requires being on one's feet." *Id*.  The ALJ did not explain how the x-ray and MRI findings showing degenerative changes are inconsistent with Dr. Witherrite's sedentary finding yet consistent with the ALJ's only slightly less restrictive RFC for light work with a 2-hour stand/walk limit.  Accordingly, on this particular record, the x-ray and MRI findings do not furnish a specific and legitimate basis to discredit Dr. Witherrite's sedentary assessment.

### d. Plaintiff's Activities

The ALJ gave less weight to Dr. Witherrite's opinion that Plaintiff could only perform sedentary work, finding it was inconsistent with Plaintiff's activities "such as collecting cans, cleaning out storage lockers, using a computer and a camera to monitor for trespassers, and doing chores."  Tr. 27.  An ALJ may discount an opinion that is inconsistent with a claimant's reported functioning.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999).  However, where an ALJ rejects a medical opinion as inconsistent with a claimant's activities, the record must contain specific details about the nature, frequency, and/or duration of those activities that would indicate they are inconsistent with the opinion.  *Trevizo v. Berryhill*, 871 F.3d 664, 676-77 (9th Cir. 2017).  Here, the ALJ did not indicate how Plaintiff's activities are incompatible with Dr. Witherrite's findings, nor does the record provide specific details regarding the frequency, duration, intensity of, or limitations while Plaintiff has engaged in these activities.

ORDER - 19

Given this record and the rejection of the other reasons provided by the ALJ for discounting Dr. Witherrite's opinions; the Court concludes that the ALJ failed to provide the requisite specific and legitimate reasons for rejecting the treating physician's opinions.

### 2. Kevin Yuen, M.D.

Plaintiff also faults the ALJ for assigning little weight to the opinion of consultative examiner, Dr. Yuen. The ALJ's rejection of Dr. Witherrite's opinion alone warrants remand, and therefore the Court need not address this claimed error raised by Plaintiff. *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

One of Defendant's contentions warrants comment herein to ensure the issue will be properly addressed on remand. The ALJ assigned Dr. Yuen's May 31, 2013 opinion little weight in part because the examination was before the "claimant stopped taking drugs and experienced pain relief while not taking drugs." Tr. 29. Defendant characterizes Dr. Yuen's opinion as a "pre-sobriety opinion" after which ("only three months after") "Plaintiff said his pain improved

when he took prescription medications instead of street drugs." ECF No. 17 at 15.

On this record, it impossible to drawn a line in between a "pre-sobriety" and "post-sobriety" period. The record reflects limited intermittent periods of possible abstinence reported by a user who acknowledges methamphetamine use to treat his pain since 2005. Tr. 634-35; Tr. 509 (mental health summary noting lack of "any real recovery from substance dependence"; period of "reduced" meth use but never completely "suspend[ed] use of non-prescribed psychoactive substances"; Tr. 510 (continued to use throughout course of mental health treatment despite placement on Adderall and Gabapentin). At the January 2015 administrative hearing, Plaintiff testified he had been using since 2013 and as recently as a week and a half before the hearing. Tr. 100. On remand, the Commissioner shall consider the necessarily more difficult and demanding review of the longitudinal record and the need for reliance upon medical sources where there are no or very limited periods of abstinence. *See Brueggemann v. Barnhart*, 348 F.3d 689, 695 (8th Cir. 2003) ("[W]hen the claimant is actively abusing alcohol or drugs, [the DAA] determination will necessarily be hypothetical and therefore more difficult than the same task when the claimant has stopped.").

**B. Materiality of DAA**

Social Security claimants may not receive benefits where drug addiction or alcoholism is a material contributing factor to disability. *See* 20 C.F.R. §§

404.1535(b), 416.935(b); 42 U.S.C. § 423(d)(2)(c). DAA is a materially contributing factor if the claimant would not meet the SSA's definition of disability if claimant were not using drugs or alcohol. 20 C.F.R. § 416.935(b). To emphasize, DAA must be *material*; in some situations, "a claimant may be disabled notwithstanding her or his alcohol or drug abuse." *Holohan v. Massanari*, 246 F.3d at 1209.

The ALJ determined Plaintiff's symptoms would improve to the point of non-disability in the absence of DAA, finding Plaintiff's symptoms and limitations "improved when he stopped using drugs and relied on prescription medications for treatment." Tr. 34; *see also* Tr. 24 ("claimant has struggled to stop drug use, though he improved after stopping."). The only difference between the first RFC including DAA and the RFC without DAA was the elimination of the finding Plaintiff would be absent from work two or three days a month. Tr. 32. This finding was determinative of disability.

Plaintiff contends that substantial evidence does not support this finding of materiality because no treating or examining source has given a medical opinion which suggests Plaintiff's physical impairments and limitations (including pain, numbness, weakness and swelling) improve when abstaining from substance abuse. ECF No. 16 at 9. Plaintiff further argues the evidence shows his physical impairments are disabling.

The ALJ's improper rejection of Dr. Witherrite's opinions undermines the ALJ's DAA materiality analysis. Moreover, the ALJ's decision never mentioned the need to be absent from work two or three days a month in the DAA analysis, nor tied it to the medical evidence. *See* Tr. 27 (discussing Dr. Witherrite's opinion that Plaintiff would miss at least four days a month due to combination of social, physical and mental problems); Tr. 108 (vocational expert hypothetical). It was error for the ALJ to find this limitation absent without explanation. *See Mustoe v. Colvin*, 2015 WL 9487990, at *5 (D. Or. Nov. 9, 2015) (holding that ALJ erred in omitting limitations from second RFC analysis without substantial evidence), *report and recommendation adopted*, 2015 WL 9462090 (Dec. 28, 2015).

Claimants may not be found disabled on account of the use of illegal substances. Accordingly, in determining whether the Plaintiff is disabled absent substance use disorders the ALJ has the difficult task of developing a full and fair record to determine whether the total of Plaintiff's remaining physical and mental limitations would in and of themselves be disabling. Because "complete and reliable medical evidence is a key element in making accurate disability decisions," "[the SSA] spend[s] considerable sums annually to obtain consultative examinations." *Standards For Consultative Examinations and Existing Medical Evidence*, 56 Fed. Reg. 36932, 36949, 1991 WL 14231 (Aug. 1, 1991). Consultative examinations play an important role in complex DAA cases where the

ORDER - 23

medical evidence in the record is inconclusive as to the materiality of Plaintiff's

DAA—especially for those who do not have an ongoing or extensive treatment

relationship with a medical source, as is frequently the case with homeless

claimants. SSR 13-2P, 2013 WL 621536 (Feb. 20, 2013), at *11.

Here, both mental and physical consultative examinations were ordered and

conducted by Dr. Miller and Dr. Yuen. Tr. 412-17; Tr. 418-25. However, it is not

apparent whether the exams were ordered to assist in determining whether DAA

was material. With respect to Plaintiff's physical impairments, Dr. Yuen did not

evaluate DAA. In finding that absent DAA Plaintiff was capable of performing

work, the ALJ concluded that Plaintiff's physical pain improved after Dr. Yuen's

May 2013 consultative examination. The ALJ's analysis does not reflect the

cautious assessment required of isolated statements in individual records and

improvement that occurs in a highly-structured environment such as therapy. SSR

13-02P, 2013 WL 521536 at *12–13(Feb. 20, 2013). *Compare* Tr. 26 (ALJ's

decision noting evidence that Plaintiff "seemed better" suggested "he was not in

pain"), *with* Tr. 465 (reflecting "tail bone pain today" and "chronic low back

pain."); *compare also*, Tr. 26 (ALJ's decision stating the record indicated the

claimant was "very busy"), *with* Tr. 515 (treatment note reflecting claimant's

statement as "I have been so busy I haven't had time to have thoughts of

depression for at least a week" while also indicating that one thing he wanted in his life was to manage his pain better).

Substantial evidence does not support the ALJ's DAA materiality finding, and this case must be remanded for a proper DAA analysis. On remand, the ALJ must evaluate Plaintiff's RFC without DAA with respect to Plaintiff's mental and physical impairments. Where the evidence is insufficient to allow the ALJ to make this determination, a consultative examination should be ordered.

### C. Step Five

"[I]f a claimant establishes an inability to continue her past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (*citing Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). At step five, "the ALJ ... examines whether the claimant has the [RFC] ... to perform any other substantial gainful activity in the national economy." *Id*. "If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do." *Tackett*, 180 F.3d at 1099. "There are two ways for the Commissioner to meet the burden of showing that there is other work in 'significant numbers' in the national economy that claimant can do: (1) by the testimony of a [VE], or (2) by reference to the Medical-Vocational Guidelines...." *Id*. "If the Commissioner meets this burden,

the claimant is not disabled and therefore not entitled to ... benefits." *Id*. (citation omitted). "If the Commissioner cannot meet this burden, then the claimant is disabled and therefore entitled to ... benefits." *Id*. (citation omitted).

### 1. Consideration of the Medical-Vocational Guidelines

The ALJ's characterization of the RFC at the exertion level of light work implicates potentially dispositive distinctions regarding the vocational ability of demarcated age groups. Six months prior to the administrative hearing, Plaintiff turned fifty years old and transitioned to a "person closely approaching advanced age" under the Medical-Vocational Guidelines (the "Grids"). The Grid Rules for sedentary and light capacity reach opposite conclusions with regard to disability as of his 50th birthday. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 201.12 (sedentary work, disabled) and 202.13 (light work, not disabled).

Social Security Ruling 83–12 provides instructions for choosing proper Grid rules when the claimant's exertional level falls between two classifications. SSR 83-12, 1983 WL 31253 (Jan. 1, 1983). If the claimant's exertional level falls between two rules that direct opposite conclusions (not disabled at the higher exertional level and disabled at the lower exertional level), then Social Security Ruling 83–12(2) directs the ALJ to find the claimant not disabled if he has an only slightly reduced exertional capacity for the higher level of exertion. SSR 83–12(2)(a). The Ruling directs the ALJ to find the claimant disabled if he has a

significantly reduced exertional capacity for the higher level of exertion.  SSR 83–12(2)(b).  Further, SSR 83–12 directs the ALJ to consult the VE when "the individual's exertional limitations are somewhere in the middle."  SSR 83–12(2)(c) (internal quotation marks omitted).

In this case, the ALJ found that Grid Rules 202.20 and 202.13 would direct a finding of "not disabled" if Plaintiff had the RFC to perform the full range of light work.  Tr. 30.  The ALJ then consulted the vocational expert to determine the "extent of the erosion of the unskilled light occupational base" caused by the Plaintiff's limitations in his ability to perform all or substantially all of the requirements of light work.  *Id*.  Absent from the ALJ's discussion was any consideration as to whether consultation of the lower Grid Rule was appropriate where the RFC determination fell between two Grid Rules directing different results.  The ALJ did not mention the Grid Rules for sedentary work at all.  More importantly, he did not explain why he chose to consult the Grid Rules for light work over the rules for sedentary work.  Had the ALJ concluded the Plaintiff's restrictions on standing and walking significantly reduced Plaintiff's capacity to perform light work, the ALJ would have been required to at least consult Grid Rule 201.12 as a framework before relying upon the vocational expert's more particularized testimony.

An understanding of the basis for the ALJ's ruling is necessary for the Court to engage in a substantial evidence review. The ALJ's explanation is inadequate.

### 2. *Vocational Expert Testimony*

Inherent in the ALJ's decision is the finding that Plaintiff's exertional limitations are somewhere in the middle of the regulatory criteria for light and sedentary work. According to SSR 83-12, where an "individual's exertional limitations are somewhere 'in the middle' in terms of the regulatory criteria for exertional ranges of work, more difficult judgements are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability. Accordingly, [VE] assistance is advisable for these types of cases." *See* SSR 83-12, 1983 WL 31253 at *3. Hypothetical questions posed to a vocational expert must consider all of the claimant's limitations. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d at 1228. "The ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record." *Tackett v. Apfel*, 180 F.3d at 1101.

Here, the ALJ asked the vocational expert a number of hypothetical questions. The first hypothetical, which he relied upon for subsequent hypotheticals and his ultimate finding, was imprecise: The ALJ asked the VE to consider an individual "capable of performing the *full range* of light work, but he or she would be limited to two hours of standing or walking rather than the six that

is standard for light work." Tr. 107. The ALJ further refined the hypothetical, adding limitations such as frequent handling bilaterally and never crouching, and asked the VE whether there were jobs in the national economy such an individual could perform. The vocational expert responded:

> One possibility given your hypothetical, Your Honor, would be a laundry folder. DOT is 369687018, light work, unskilled. The SVP is 2. Nationally it comes to be 210,000 and more than approximately 1400. The second possibility give[sic] your hypothetical would be a production assembler. DOT of 706687010, light work, unskilled, SVP of 2, nationally approximately 206,000, in the market approximately 8,900, Your Honor.

Tr. 106.

The vocational expert's testimony was not in accord with the Dictionary of Occupational Titles (DOT). The DOT description of the production assembler job demands occasional crouching, however the hypothetical eliminated crouching. DICOT 737.684-034, 1991 WL 680038. Moreover the laundry folder position requires the ability to stand or walk for up to six hours. DICOT 369.687-018, .1991 WL 673072. The ALJ did not ask the vocational expert how the standing/walking limitation impacted or eroded the number of available positions. This critical vocational evidence is even more suspect given this exchange occurring after the sixth hypothetical:

> ALJ: Oh, and I should have mentioned also those initial jobs, those laundry folder and a production assembler jobs, those are classified as light in the DOT, but the limitation here was to less than light with the two hours standing or walking
> VE: *There's no jobs, Your Honor*.

ORDER - 29

ALJ: Okay….

….

Plaintiff's Counsel: Did you just ask one more about sitting and standing?

ALJ: I did not actually.

Tr. 110.

It is not clear from the record whether the vocational expert understood the hypothetical and the nature of Plaintiff's exertional capacity with its limitations to less than two hours of standing or walking. As a result, it is also unclear whether the ALJ considered the extent of erosion of the occupational base. Given the ALJ's error involving the medical opinion evidence and RFC, it is unclear whether the ALJ communicated all of Plaintiff's exertional limitations. The accuracy of the vocational expert testimony is *essential* to the sequential evaluation when a claimant's RFC falls between light and sedentary work. SSR 83-12, 1983 WL 31253, at *3.

### D. Symptom Testimony

Having concluded the ALJ erred in his evaluation of the medical evidence, determination of the RFC, materiality of DAA and step five analysis, and that remand is required, the Court declines to address Plaintiff's arguments pertaining to the assessment of Plaintiff's symptom testimony. ECF No. 18 at 3-4.

### REMEDY

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*,

ORDER - 30

888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome[.]" *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

Although Plaintiff requests a remand with a direction to award benefits, ECF No. 18 at 4, the Court finds that further administrative proceedings are appropriate. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). Here there are ambiguities in the evidence and a complex DAA materiality analysis which merits additional

investigation and explanation. "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1101. Instead, this Court remands this case for further proceedings. On remand, the Commissioner shall perform step three onward, reconsidering the medical opinion evidence of Plaintiff's treating and examining physicians, and further develop the record as necessary. The Commissioner shall consider the RFC, including the Plaintiff's physical RFC with and without DAA. The Commissioner shall consider the basis for the decision that Plaintiff's RFC falls within the light work category and if appropriate, address the Grid rules for sedentary work.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is not supported by substantial evidence and free of harmful legal error. **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 16) is **GRANTED.**

2. Defendant's Motion for Summary Judgment (ECF No. 17) is **DENIED**.

3. The District Court Executive is directed to file this Order, enter **JUDGMENT FOR PLAINTIFF**, **REVERSING** and **REMANDING** the matter pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for additional proceedings consistent with this recommendation.

4. The District Court Executive is further directed to enter this Order, provide copies to counsel, and **CLOSE** the file subject to re-opening for a properly presented application for attorney fees.

DATED this January 19, 2018.

<u>s/*Mary K. Dimke*</u>
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE